## UNITED STATES of America,

### v.

### Thomas HAGER.

### Crim. No. 1:92–00159–01.

United States District Court,
S.D. West Virginia,
Bluefield Division.

Dec. 1, 1992.

Kelly Ambrose, Asst. U.S. Atty., Charleston, W.Va., for plaintiff.

Hunt L. Charach, Federal Public Defender, Charleston, W.Va., for defendant.

## OPINION

FABER, District Judge.

This case presents the question of whether an act of obstruction committed during an investigation by state officials can be used for federal sentencing purposes where the state investigation is taken over by federal authorities and federal charges result. The defendant, Thomas Hager ("Hager"), stands convicted upon a plea of guilty to illegal possession of a firearm in violation of 18 United States Code, §§ 922(g)(1) and 924(a)(2).

In the early morning hours of July 13, 1991, the Mercer County, West Virginia Sheriff's Department received a complaint about an altercation at the home of Roger and Regina Murphy in Green Valley, West Virginia. Deputy Walter Lawson and another Mercer County deputy sheriff responded to the call and stopped a vehicle containing four occupants about 100 yards from the Murphy residence. One of the occupants, later identified as defendant Hager, was seen by Deputy Lawson to place a firearm under the seat of the vehicle and flee on foot.

---

**3.** This decision has no bearing on plaintiff's claims with respect to the other alleged design defects.

Later that same day, July 13, 1991, Deputy Lawson swore out a criminal complaint against Hager in Mercer County Magistrate Court charging him with carrying about his person a dangerous and deadly weapon, in violation of West Virginia law. A state warrant was issued for Hager's arrest which was executed two days later when Hager surrendered himself to authorities.

On July 24, 1991, Deputy Lawson had a telephone conversation with Special Agent Elsie Kaye Poynter of the Federal Bureau of Alcohol, Tobacco and Firearms ("ATF"), and met personally with Ms. Poynter the next day, July 25. Deputy Lawson and Agent Poynter had ascertained that Hager was a previously-convicted felon, having been found guilty of unlawful wounding in the Circuit Court of Mercer County, West Virginia, on August 8, 1990. Deputy Lawson and Agent Poynter agreed that ATF would take over the investigation involving Hager under a program known as "Operation Triggerlock." Deputy Lawson, on July 25, 1991, caused the pending state charge against Hager arising out of the July 13 incident to be dismissed. Thereafter, ATF was solely in charge of the investigation and prosecution of Hager based upon the events of July 13.

On October 8, 1991, Roger and Regina Murphy, at whose home the trouble leading to Hager's arrest on state charges had begun, testified under subpoena before a federal grand jury investigating the matter. During the course of their testimony, the Murphys told the grand jury that they had received a telephone call from Hager in which he threatened to harm them or their children if they cooperated in the proceedings against him. The United States seeks to use this threat, which the court finds is established by a preponderance of the evidence, as a basis for a two-level enhancement of Hager's sentencing under section 3C1.1 of the Guidelines.

The evidence is in conflict as to when this threat was made. Regina Murphy told the grand jury it occurred "just when we got" the grand jury subpoena. Roger Murphy told the grand jury only that it happened "awhile back." At the sentencing hearing on November 18, 1992, Agent Poynter testified that Regina Murphy reported the threat to her when she appeared before the grand jury on October 8, 1991. According to Agent Poynter, Regina Murphy told her that the threatening call was received about the time the grand jury subpoena was issued and served; Ms. Poynter fixed the time of issuance and service of the subpoena between September 16 and September 18, 1991. At the sentencing hearing Regina Murphy testified that the threat occurred about the time of the grand jury subpoena which she indicated was "probably at the end of September." Roger Murphy at the sentencing hearing said the threat occurred about the time he got the grand jury subpoena or shortly before. Deputy Lawson at the sentencing hearing testified that Regina Murphy had told him she had been threatened by Hager within a month after his initial contact with ATF which, as set forth above, had occurred on July 24, 1991.

On the other hand, there was evidence that the threat may have occurred very shortly after the July 13, 1991 incident. Patrick Kearns, an investigator for the Federal Public Defender, testified at the sentencing hearing that both Murphys had told him they had received the threat about two or three days after the July 13 incident. This would place the making of the threat at a point in time prior to the date on which responsibility for the investigation was transferred by state authorities to federal agents. Upon cross-examination at the sentencing hearing, the Murphys admitted they had told Kearns that the threat took place two or three days after the July 13 incident, but reiterated their prior testimony that their current best recollection was the threats had occurred about the time they were subpoenaed to appear before the federal grand jury.

■ The court finds it unnecessary to resolve this inconsistency in the testimony since it believes enhancement for obstruction of justice is proper upon the facts of this case even if the threats were made during the time when the state was still solely in charge of the investigation.

U.S.S.G. § 3C1.1 reads as follows:

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the level by two levels.

■ Commentary 3(a) to U.S.S.G. § 3C1.1 makes clear that threatening, intimidating or unlawfully influencing a witness is obstruction within the Guideline provision. The defendant attempts to escape application of the enhancement for obstruction in this case by contending that the Guideline provision is, by its express terms, limited to the period of the federal investigation; if the threat occurred during the time the state was investigating or prosecuting the case, defendant contends, an enhancement for obstruction may not be ordered. The court disagrees. The words "investigation, prosecution or sentencing of the instant offense," as used in the Guideline provision, are broad enough to encompass a part of the investigation completed by state authorities, particularly when those authorities transfer their ongoing investigation to federal agents for completion as was done here.

This court has found no controlling authority within the Fourth Circuit, but the United States Court of Appeals for the Ninth Circuit was squarely confronted with this issue in *United States v. Lato*, 934 F.2d 1080 (9th Cir.1991). In that case, the defendant was arrested for his role in an insurance fraud scheme involving false accident reports and claims. The initial investigation was pursued by state officials who contemplated bringing state criminal charges against the defendant. Eventually, however, the investigation was turned over to federal agents who charged the defendant with mail fraud, in violation of 18 United States Code § 1341. During the investigation by state officials, the defendant had directed a series of letters to a witness instructing her to lie to police and fabricate evidence. The federal district court increased defendant's Guideline range by two levels for obstruction of justice because of these threatening letters. The defendant argued on appeal that the trial court had erred in ordering such an enhancement because the acts of obstruction were committed during the state investigation.

The United States Court of Appeals for the Ninth Circuit considered the matter to be one of first impression insofar as the issue was squarely presented. However, that court found several prior cases in which the issue was not specifically addressed, but in which the facts demonstrated that an enhancement for obstruction had been granted for acts directed toward state officials. The court reasoned that these cases implicitly adopted a "sensible approach to [defendant's] culpability" when the purpose of the Guideline provision allowing the enhancement is considered. *Id.* at 1083. The court noted that the Guidelines' purpose is to provide increased punishment for conduct which is calculated to mislead or deceive authorities. The court found no hint in the Guideline provision that the term "authorities" was used with exclusive reference to federal rather than state officials. While the court recognized that the Guidelines' use of the language "the instant offense" might be deemed to suggest that there must be some connection between the obstruction and the federal offense, the court held that this connection was satisfied on the facts presented to it. Such facts are significantly similar to the case now before this court.

Defendant has directed this court's attention to the case of *United States v. McMillion*, No. 5:92–00053, August 4, 1992, in which one of the other judges in this district refused to grant an enhancement for obstruction on facts which are said to be the same as in this case. There was no written opinion in that case, but this court has been furnished with a transcript of a portion of the court's ruling from the bench during McMillion's sentencing hearing. While this court would certainly be inclined to defer to that decision were it on point, its facts are distinguishable from the case at bar. In that case, the defendant McMillion was originally charged in state court with the felony offense of attempted murder. He subsequently contacted the mother of the victim of the attempt and threatened to kill the victim if the pending state charges were not dropped. Upon learning

that McMillion was a convicted felon in the State of Virginia, a federal indictment was returned in the Southern District of West Virginia charging him with unlawful possession of a firearm. In *McMillion*, prosecution of the defendant by state authorities was not interrupted in mid-course and turned over to federal agents for completion as was done here. Instead, the state completed its investigation and charged the defendant with the misdemeanor offense of brandishing a deadly weapon. There was a separate state conviction, a separate state sentencing and, one must assume, a separate opportunity for the state sentencing judge to consider the impact of the threat. By contrast, in the case before this court, there was but one investigation, begun by the state and completed by the federal government, which resulted in but one criminal charge against the defendant. If the threat against the Murphys is not considered in the federal sentencing in this case, it cannot be considered for sentencing purposes at all, thus allowing defendant to make the threat without any adverse consequences for him whatsoever. Such would clearly be an unjust result and one the promulgators of the Guidelines could hardly have intended.* What matters is the deceitful and misleading nature of defendant's conduct in making the threat, its reflection on his character and criminal intent, its negative impact on the witnesses threatened and the consequent potential for a chilling effect on the criminal process, and the extent to which the threat aggravates the gravity of the principal crime charged. It matters not a whit to any of this who was in charge of the investigation at the time the threat was made. Obviously there must be some nexus with the federal crime charged to make the threat relevant, but this connection is easily satisfied by the continuity in the investigation leading to the federal charge as that investigation passed directly from state into federal hands.

Defendant has directed the court to two cases which he maintains support the proposition that the threats may not form the basis for an enhancement unless made while federal authorities were in charge of the investigation. In the court's opinion, neither case is on point. In both those cases, *United States v. Wilson*, 904 F.2d 234 (5th Cir.1990), and *United States v. Luna*, 909 F.2d 119 (5th Cir.1990), the acts of obstruction were committed in conjunction with the actual offense charged and such acts occurred before any investigation into the criminal misconduct had been commenced by anyone on the federal or state levels. Thus, the acts of obstruction in those cases fell outside the express language of U.S.S.G. § 3C1.1 which permits an enhancement if the defendant obstructs or attempts to obstruct "the administration of justice *during the investigation,* prosecution or sentencing of the instant offense...." (Emphasis added.)

Therefore, this court holds that defendant's acts of obstruction, consisting of threats directed toward two material witnesses, which were made during an investigation begun by state officials and later turned over to federal authorities for completion and prosecution, may be used for sentencing purposes in determining the federal offense level. The connection between the acts of obstruction and the federal offense for which defendant is being sentenced is, under such circumstances, sufficient to meet the test of *United States v. Lato*, 934 F.2d 1080 (9th Cir.1991). Accordingly, the court will order a two-level enhancement of defendant's Guideline sentencing range for obstruction of justice.

---

* The argument that the threat could be made the subject of separate criminal charges against defendant does not remove this difficulty. A higher standard of proof would be required to convict defendant separately of the threats and such higher standard would govern resolution of the difficult question discussed above as to when in point of time the threats were made. Furthermore, separate charges would involve the cost and inefficiency of additional and separate proceedings in either state or federal court.